RECEIVED
DEC 1 2 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

UNITED STATES

versus

CHEVELL M. HAMILTON, ET AL.

CRIMINAL NUMBER 05-50066-01-08
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court are five motions to suppress evidence derived from allegedly unlawful electronic surveillance and a request for an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978), filed by defendants Chevell Hamilton ("Hamilton"), Bobby Ray Snow ("Snow"), Vito Watkins ("Watkins"), Terry Moore ("Moore") and Ardis D. Brown ("Brown"). See Record Documents 99, 102, 103, 104 and 111. Based on the following, all of the defendants' motions are **DENIED**.

## I. BACKGROUND

On August 25, 2005, a sixteen count superceding indictment was returned by the grand jury against Hamilton, Snow, Watkins, Moore, Frederick James ("James"), Albert Pegues ("Pegues"), Brown and John O'Neal, Jr. ("O'Neal"). See Record

1

Document 84. Hamilton, Snow, Watkins, Moore and Brown were each charged in count one of the indictment with conspiring to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count two of the indictment charged Hamilton, Snow, Watkins and O'Neal with conspiring to possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectible amount of crack, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count three of the indictment charged Hamilton, Snow and O'Neal with possession with the intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count four charged Hamilton, Snow and O'Neal with possessing and carrying a firearm during and in relation to drug trafficking crimes, in violation of 18 U.S.C. §§ 924(c)(1) and 2. Count five charged Watkins with possessing and carrying a firearm during and in relation to a drug trafficking crime. Counts six through fourteen charged Snow, Moore, Brown, Hamilton, James, Watkins and Pegues with knowingly and intentionally using a communication facility, to-wit: a telephone, in causing or facilitating the commission of conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. Count fifteen charged Brown with knowingly and intentionally attempting to distribute 500

grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count sixteen is a forfeiture count with regard to defendant Pegues.

On November 5, 2004, as a result of a general investigation, miscellaneous arrests, and cooperation by various other parties, an application for a wiretap was lodged in the Western District of Louisiana. The application sought authorization for the interception of wire communications of Hamilton and other subjects, including Snow, Demond Burney, Elke Gilliam, Watkins, Marqualius Turner, Derrick Chambers, Terrance Johnson, Jerry Brown, Brodrick Collins, Russell Brown and Alonzo Miles. The application was supported by the affidavit of Lee Scott ("Scott"), a DEA Task Force Agent. The application was granted in an order signed by Judge S. Maurice Hicks.

On February 25, 2005, another application for a wiretap was filed, this time for a different target telephone. This second application sought the interception of the wire communications of many of the same targets as the original wiretap, with the addition of three new targets--Robin James, Paul Washington and Tameka Wilson--and a new target telephone. This application was based upon another affidavit executed by DEA Task Force Agent Scott. The application was granted in an order again signed by Judge S. Maurice Hicks.

Finally, on April 13, 2005, Scott executed another affidavit, again in support

of an application for a wiretap. This third application sought the interception of the wire communications of many of same targets as the original and second wiretaps. However, it added four new targets who had yet to be named in any previous application--Santino Ellis, Raymond Kyle, David Montalvo and Royce Brown--as well as a new target telephone. On April 13, 2005, Judge S. Maurice Hicks granted this third application.

Defendants Hamilton, Snow, Watkins, Moore and Brown have moved to suppress all evidence obtained as a result of the wiretaps and for a <u>Franks</u> hearing on the matter. They argue that: (1) the affidavits in support of the wiretaps failed to establish probable cause and (2) the affidavits filed by the agent failed to establish the "necessity" for the wiretaps as required by 18 U.S.C. § 2518(1)(c). The government has filed oppositions to the motion to suppress urging that there was both probable cause and adequate proof of necessity for the wiretaps at issue. The government argues that the motion to suppress be denied without a hearing.

## II. LAW AND ANALYSIS

### A. Misstatements And Omissions.

There are no allegations that the affidavits supporting the applications for any of the wiretaps contained material misstatements or omissions which were intentionally or recklessly false and misleading. However, the defendants have

nevertheless requested a <u>Franks</u> hearing and the suppression of the evidence produced by, or derived from the wiretaps.

The Supreme Court has articulated a two prong test that must be satisfied in order to obtain a hearing on a motion to suppress in this regard. First, the defendant must make a "substantial preliminary showing" that the affidavit included actual false statements or untruths, made "knowingly, intentionally, or with reckless disregard." <u>Franks v. Delaware</u>, 483 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978). Second, the court must determine that the alleged false statements or omissions were needed to establish probable cause. <u>See id.</u> This analysis applies not only to search warrants, but also to wiretaps. <u>See United States v. Martin</u>, 332 F.3d 827, 834 (5th Cir. 2003) (applying the two prong test from <u>Franks</u> to allegedly false statements in a wiretap application).

In the case at bar, the defendants have not even met the burden of a preliminary showing. None of the defendants has offered any evidence of intentional falsity or reckless disregard for the truth on the part of the affiant. The defendants have also failed to meet the second prong of the <u>Franks</u> test, as there has been absolutely no showing that the decisions of the judge were affected by alleged misstatements or omissions. The defendants have clearly not made the preliminary showing necessary to obtain a <u>Franks</u> hearing and certainly have not set forth sufficient proof to require

suppression of the evidence.

**B.     Probable Cause.**

An application for a wiretap must demonstrate probable cause to believe that the targets have committed, are committing, or will commit a crime, as well as "probable cause for the belief that particular communications concerning that offense will be obtained through such interception." 18 U.S.C. § 2518 (3)(a)-(b). Probable cause is evaluated utilizing a totality of the circumstances test. See United States v. Dickey, 102 F.3d 157, 162 (5th Cir. 1996).

It is beyond peradventure that the affidavits provided to the court established probable cause both to believe that the targets had committed and would continue to commit crimes and that particular communications concerning those crimes would be obtained through interception. Agent Scott detailed numerous reasons to believe that the interception of calls on these particular target telephones would lead to evidence of drug crimes. For example, intercepted communications were expected to reveal discussions concerning the sale and delivery of marijuana and cocaine and the payment, transportation and location of such. Additional co-conspirators were also expected to be revealed, including the extent of their relationships to the crimes. Probable cause to believe that the targets had committed, and would continue to commit, crimes was illustrated throughout the affidavit.

## C. The Necessity Requirement.

The defendants primarily urge that the evidence produced by or derived from the wiretaps should be suppressed because the affidavits failed to establish the necessity of the wiretaps as required by 18 U.S.C. § 2518(1)(c). Section 2518 requires that each affidavit in support of an application for a wiretap contain, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This "necessity" requirement was included in the statute in order to prevent wiretapping from being utilized in cases where "traditional investigative techniques" are sufficient. See United States v. Collins, 927 F.2d 1385, 1412 (5th Cir. 1992) (citing United States v. Webster, 734 F.2d 1048 (5th Cir. 1984)). However, this necessity requirement has not led courts to require a showing that "every other imaginable mode of investigation would be unsuccessful." United States v. Diadone, 558 F.2d 775, 778 (5th Cir. 1977). Instead, the Fifth Circuit merely requires a "common sense" evaluation of the statements in the affidavit to determine if necessity has been established. See United States v. Guerra-Marez, 928 F.2d 665, 670 (5th Cir. 1991).

The defendants have failed to demonstrate that the wiretaps in this case did not meet the statutory requirement of necessity. The affidavits assert that numerous

"traditional investigative techniques" were tried in this case including the use of informants and pin registers. The affidavits further explain why other techniques such as physical surveillance, undercover officers, and search warrants were not likely to be successful in this case. Specifically, Agent Scott's affidavit recites that he believes "that the interception of wire communication as applied for herewith is the only available technique that has a reasonable likelihood of securing the evidence necessary to prove beyond a reasonable doubt that the target subjects, and others as yet unknown, are engaged in a conspiracy to commit the above offenses." Record Document 107, Scott Affidavit at 40-41. As the courts have repeatedly held, the government need not exhaust every alternative before a wiretap is proper. See United States v. Kelley, 140 F.3d 596, 605 (5th Cir. 1998).

In this case, Agent Scott detailed the various alternatives that were attempted before the government sought wiretaps, including the use of pole cameras, physical surveillance and garbage seizure attempts. He explained why these avenues had proven unsuccessful. He then described other means of investigation, but advised that these other avenues, such as the use of search warrants or undercover agents or grand jury subpoenas, would not yield results, would compromise the investigation, and would be too dangerous to employ. There is no question that the necessity

requirement of 18 U.S.C. § 2518(1)(c) has been met.[1]

### III. CONCLUSION

The defendants have failed to demonstrate that the affidavits intentionally or recklessly contained false statements, that the affidavits lacked probable cause or that the applications did not establish necessity.[2] Accordingly;

The defendants' motions to suppress evidence (Record Documents 99, 102, 103, 104 and 111) are hereby **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana this the 12th day of December, 2005.

JUDGE TOM STAGG

---

[1] In fact, most of the defendants made only cursory and vague references to the affidavit, as opposed to any particularized references and/or complaints regarding the affidavit at issue.

[2] Various other conclusory complaints are made about the affidavit. For example, a mention of unauthorized intercepted conversations is made in one of the motions to suppress. However, no support for this, or any other allegation other than the ones addressed above, was provided for these claims.